Good morning. May it please the court, my name is Jeffrey Fogle. I'm appearing here on behalf of the plaintiff, seated at the council tables, my co-counsel, Stephen Rosenfield. It's always awkward, as I'm sure you realize, for a lawyer to argue his own cause. In fact, we were taught in law school that a lawyer who has himself as a lawyer is a fool, but there's no choice here. And I'm aware of the fact that appellate courts are reluctant to review council fee awards by district court judges, and for many good reasons. And indeed, this is the first attorney fee award that I have ever appealed in the federal court system. So why do we do so? One, because it was patently unfair. Secondly, because the district court erred in its analysis in making its determination of the proper attorney's fee case here. And third, because the decision below will undermine the availability of private attorneys general to enforce the Constitution. Do you agree that the standard is whether or not the district judge was clearly wrong or committed an error of law would be the test? Yes. So tell me where the error of law is. Well, I think there are several errors of law. First, the district court did not focus on the appropriate question. The appropriate question as set forth by I think what is the leading case in the Supreme Court in Hensley, and I will quote, nor is it necessarily significant that a prevailing party did not receive all of the relief requested. For example, a plaintiff who failed to recover damages but obtained adjunctive relief may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of money. The district court did not focus on that question. After determining the lodestar, which we have not appealed and dealt with the minor issues there, the district court then focused on the question of limited success. And in the district court's view, it came out with a number which I think was in error as a matter of law because it was simply an arbitrary number. The district court decided, well, I'm going to reduce it by 45 percent. Why? I'm going to reduce it, number one, because you failed in one of your motions. Well, that was an error of law because, number one, you don't deny attorney's fees simply because you lose a motion along the way. And more importantly, in this case, we prevailed on that very claim that we had lost the motion on. So there was absolutely no basis to reduce the fee here on a claim which we had prevailed on. Secondly, the court focused on the question of money. And as I just read, that is not the question, to reduce a fee award simply because the plaintiff did not achieve every single relief requested. The plaintiff in this case achieved a success on every claim presented. And it is apparent not only from the complaint here, and if you look at the course of litigation and what was litigated, if you look at the cases that my client has litigated around the country, the thrust of this case and all through the case and in every case that they have gone through has been to get access to their particular constituency, which are prisoners, in order to propagate their views and to disseminate information to their prisoners. So those are the reasons why the district court erred as a matter of law. As the Supreme Court said in the opposite context, when a plaintiff was awarded a contingency enhancement of a certain percentage, the court said, well, why that percentage? Why 50 percent? Why not 40? Why not 70? And the question is the same here. Why 45? The district court gave no reason why 45 was the appropriate number. Why not 30? Why not 75? This was a number called out of the air, and it may have been shot from the hip by the district court. The district court may well have felt that, but never gave an explanation as to why 45 percent was the right number, which makes it impossible for an appellate court to even review the question that the district court decided. So those were the legal reasons why I think the district court erred as a matter of law. Now, the other issues here, of course, were the fact that it was patently unfair. As I've set forth in our brief, we reduced our fees when we applied by 10 percent to reflect some duplication and excessive hours. The district court then reduced the fee by another 10 percent to reflect similar items. The district court then reduced it yet another 10 percent in lowering the fees, the rate at which we had sought. And when you put that together with the 45 percent reduction that was imposed because of the district court's analysis of limited success, we ended up with 60 percent fee reduction in this case. And that is simply unfair. It's not only unfair to us, but it is unfair to all the lawyers who litigate cases like this and will inevitably result in a diminution of lawyers who are willing to take the kinds of cases that the Constitution requires be taken by private lawyers. The federal government cannot enforce the Constitution. That is why we have Section 1942, 1983 rather, so that private counsel is available to enforce the Constitution. And that's why we have Section 1988, to compensate those lawyers and thereby encourage them to do so. Now, we're not like typical contingency lawyers. We don't get windfalls out of our personal injury cases. When we prevail, all we get is what our actual hours were reasonably spent. And I don't disagree with that. We all have to exercise billing judgment with respect to our cases where a private client is paying us. And most of us do this kind of work for impecunious clients and for nonprofit clients, as is here. And therefore, we do not get paid unless we prevail. But certainly when we do prevail, we should be entitled to a fair and reasonable fee that reflects the measure of success that we've had. And again, I cannot emphasize too strongly that we succeeded on every single claim in this case. And the district court failed to recognize the important constitutional values that are implicit in those victories. They're not private victories. Those are public victories. Those are public victories for the First Amendment. Those are public victories for access to people who have constitutional rights within prisons. And they're public victories in calling to task, if I can put it that way, a public official who did not respect the Constitution. You noted that you only get paid, unlike personal injury attorneys, you only get paid for the hours you worked. The district court's order reduced your fee award, also reduced the number of hours that you had billed, as not demonstrate that you had not demonstrated that the claimed hours are both reasonable and performed on the litigation. Do you object or have argument in response to that? Well, we're not challenging that. All right. It's just as if a client came to me after I submitted a bill and said, look, I don't think this was fair. And I would sit down and review my bill again and perhaps agree with the client. In this case, of course, the court had the authority to actually reduce it where the client might not. But we're not challenging that decision. That's an appropriate decision for the district court, even if I disagree with it. And that's the kind of decision that I understand and respect the fact that appellate courts don't want to have to review. Well, I'm sorry. Pardon me? If we had the authority to set the fee, we probably don't. What would you say the fair fee should have been? The lodestar that the district court came to. The lodestar is the presumptively reasonable fee to be granted. And that's the fee that reflects the fact that the district court had identified hours that were duplicative or excessive, applied what the district court determined to be the appropriate hourly rate for the attorneys and to come out with a lodestar. And that is the presumptively valid rate. There was no reason in this case, given the level of success in particular, to have reduced it any further than that. And I will, if there are no other questions, I'll reserve the rest of my time for rebuttal. Okay. Thank you. Thank you. Mr. Rosen. Good morning. May it please the Court. Jeff Rosen on behalf of Sheriff Stolle. Judge Davis did not commit error when he reduced the appellant's attorney's fees. Judge Davis is one of the finest judges we have in the district court. Very methodical, very detail-oriented, and always right on the law. And what he said was in this case is that a 45% reduction in attorney's fees is appropriate in this case to reflect the plaintiff's tangible and substantial victories on some of its 1983 claims while also taking into account defendant's success in avoiding monetary damages as well as defending the constitutionality of their prior exclusion of all of plaintiff's publications from the Virginia Beach Correctional Center based on the lawful ordering form policy. But in determining an appropriate fee award, is the court, isn't the court only to look at plaintiff's successes rather than defendant's successes? Well, it did. It did. And, in fact, if you look at the complaint at appendix page 25, this is what the plaintiff asked for in their complaint for relief. Permanent injunction requiring defendants to allow receipt of PLN's magazine. Not granted. That was D. G. Declaratory judgment that Virginia Beach Correctional Center rule prohibiting ordering forms, the prices, catalogs, brochures, violates the First Amendment. Not granted. H. Preliminary and permanent injunction prohibiting defendants from refusing to allow PLN's information brochure packets into the jail. Not granted. I. Awarding nominal compensatory and punitive damages. Not granted. So all those, the relief requested by the plaintiffs was not granted. And that's all. At least half of it was not granted. And that was what Judge Davis reflected in his decision throughout his decision. Plaintiffs tried to claim that they weren't seeking damages, but that's untrue. Judge Davis acknowledges they were seeking damages up until the end. And, in fact, their own bill suggests the work they worked on the case seeking damages. If you look at the plaintiff's attorney's fee petition in the appendix, Tony Weber's bill for, I'm trying to find the appendix. It's overwritten. It's on page 145. It says on the bottom. But anyway, he asked, he billed for compiling and preparing discovery responses for supplemental interrogatories and requests for production of documents. He also spent lots of time preparing for the deposition of the head, the founder of PLN. He was deposed for a great length to determine the damages. And, in fact, after those depositions, they dropped the damage claim because they had no damages. They suggested they had a variety of damages. They tried to hire a PR firm to take and send out mailings to show in case in the event they won. None of those damages succeeded. And Judge Davis is intimately familiar with that. That's why the court defers to the district court in these cases because he knows, he was aware of all the efforts the plaintiffs tried and failed to succeed. And so when the plaintiff says they succeeded on all claims, that's certainly untrue, patently untrue. And if you look at the relief request and the complaint and what they achieved, they did not achieve all their results. At best, they received maybe 45 percent. And that, I think, is the reason Judge Davis did what he did in his decision. Judge Davis ruled that Sheriff Stalia was correct in not allowing PLN publication in because they had a valid order in foreign policy. And that was reflected in his decision. The plaintiff also suggests that because they entered a consent order, that they prevailed on all issues. That's certainly not the case. In fact, in the consent order, Sheriff Stalia achieved a major victory by forcing PLN to completely restructure their magazine and removed all photos in its magazine publication, which was sexually explicit. That now goes throughout the country. So Sheriff Stalia got them to modify their advertising and took out all photos in their publication. That certainly was a significant victory for the police. The Supreme Court acknowledged in the Meyer v. Gagne case that the district court would be most familiar with the issues involved with litigation and any final consent order and deferred to the judges' analysis and findings or awards of attorneys' fees. And I think that's what we respectfully would ask this Court to do. For these reasons, we would ask that the appellees would respectfully ask the Court to affirm the district court's fee award. If there are no further questions, I'll say goodbye. Thank you, Mr. Rosen. Thank you. Mr. Farquhar, you have some time remaining. Thank you. I'm glad I saved some time. I have to dispute my adversary. That's the nature of being an adversary, of course. But the important relief that was sought in this case had to do with the ability of my client to have their information and magazines,  The declaratory judgment is asked often by lawyers, and I sometimes wonder even why I ask it when I'm asking for an injunction. Who cares about a declaratory judgment if I get an injunction? In this case, it was unimportant to get declaratory judgments because we got the relief we wanted. The judge declared that the sexually explicit policy of the Virginia Beach Sheriff's Office was unconstitutional. There is nothing in this record to suggest that my client changed its format in order to obtain that injunction granted as a result of summary judgment by the Court. What about opposing counsel's argument that you also sought damages throughout the litigation? Well, his suggestion really is that we not seek damages in a civil rights action if we don't want our fees reduced. Now, there are many tactical reasons to ask for damages, and I don't think there's any doubt, as the judge below recognized, that even with respect to the issue of, say, due process, which we prevailed on and which he found that had been denied to us all through the time involved, we would have been entitled to nominal damages. Now, that would have constituted a dollar for each issue that would have been placed into the prison. That has some significance in terms of attorneys' fees, but it has no significance in terms of measuring the level of success here. The level of success here is the fact that we got everything in. The fact that we lost the one issue about ordering forms was not to deprive us of being the prevailing party since the defendants agreed to a consent order saying they will not enforce that provision against us. And as I've said, they'll not be able to enforce it against anybody. So we got what we asked for. We didn't get every single item that we asked for in relief. We won every single claim, and we were denied a couple of declaratory judgments, and that's all that was at issue. And if you do look at our attorneys' fee application, you will see how a limited amount of time was spent on addressing the issue of monetary damages. And some of the issues that have been brought up by defense counsel, frankly, are not even part of the record and shouldn't be before the court. Thank you very much.
judges: William B. Traxler, Jr., Henry F. Floyd, Stephanie D. Thacker